This is Horne v. Adger Good morning, Your Honors. My name is Brad Krause, and I represent the Appellants, Patissi Adger, the Estate of Leroy Deese, and Daryl Breland. This is a matter that involves a denial of qualified immunity from the District Court in Connecticut with respect to plaintiff's Section 1983 claims that are alleged against the Appellants who are defendant detectives in the lawsuits. Earlier this week, you received additional documentation from Counsel for Jackson, which I'd like to address with regard to the fabrication count that was alleged against the Appellants. With respect to the fabrication count, the detectives assert that qualified immunity shields them from liability because reasonable officers would disagree whether those facts were knowable. So there are two things that I'd like for you to address that would help me. One is that Judge Chatney seems to have determined that you forfeited a number of these arguments related to qualified immunity. And I wonder if you could help me figure out if that's correct and if that is correct, that is, if you didn't really make or your clients didn't make those arguments, what the consequences are. And second, assuming that some of these arguments may not have been forfeited, what do we do about the fact that you appear, at least on appeal, to dispute a number of different facts that are alleged by the plaintiffs in this case? So those are the two questions for me. With respect to the first issue, plaintiffs already brought up this issue of waiver subsequent to the summary judgment rulings, and Judge Chatney denied that motion, which permitted this appeal to be brought for your honor. So there is that point. But with regards to the substance of qualified immunity and how it was pled by the defendants through the course of litigation. I'm sorry. When you say that they brought up the issue of waiver, I mean, I think I've got an opinion from Judge Chatney that says, in connection with summary judgment, that on a number of issues, not all of the issues, you did not raise the qualified immunity defense. Well, we take issue with that, and we don't think it's correct for the first reason, and that is qualified immunity has always been pled as a defense from the outset of this litigation. In the pleadings, in the affirmative defenses, and then subsequently throughout the course of the litigation, the defendants have asserted qualified immunity and that they did not do what they have been alleged to have done. And then specifically within the briefing for the motions for summary judgment, within our briefing before this court, we detail where those arguments were raised with respect to each specific 1983 count. And that's included in our briefing with regards to the fabrication count, the Brady counts, and those specific issues, as well as the failure to intervene counts. So my response to that first question is that generally, qualified immunity has been an issue throughout the course of litigation. And the case law states that that is sufficient, but even beyond that, the defendants have pled and asserted qualified immunity specifically within the summary judgment briefing, which also, by the way, Your Honor, included summary judgments on behalf of the individual defendants, as well as a motion by the plaintiff that then was responded to and those subsequent documents. The second question, can you refresh my recollection real quick, please? Even if we assume that you preserve those arguments related to qualified immunity, on appeal, you seem to dispute a number of the facts as alleged by or as claimed by the plaintiffs. And I wonder, just as a matter of our own appellate jurisdiction, whether we've got appellate jurisdiction, because what we require is, among other things, either a stipulation of facts or some agreement as to the facts in order to trigger our review of a qualified immunity claim. So could you address that? So respectfully, all of the facts that are included in our appeal are either undisputed facts or facts that the plaintiff has asserted in the underlying motions. So based on that, based on Tierney v. Davidson, which is a second certain case, once the appellants do that, they are permitted to bring this plenary appeal before Your Honor. I understand that, but let me give you an example. So in your brief, you say during interrogations, Mr. Pearson was not threatened. They say he was – they threatened, your clients, threatened to charge Pearson with murder, violate his probation, take his kids away, and charge his mother with perjury. Those are two diametrically opposed statements of the relevant facts. And so if those are two diametrically opposed statements, you are – your clients are – you are opposing – you're claiming qualified immunity based on what appear to me to be disputed facts, and that seems to me, preliminarily, to strip us of appellate jurisdiction. What am I getting wrong about that?  So we have adopted all of plaintiff's allegations with regards to what could be called threats or coercion. You have not. You say during interrogations Pearson was not threatened. So if – do you agree that – well, for the purposes of this appeal, that your clients threatened to charge him with murder and violate his probation? Yes. Okay. Yes. And I'm not exactly sure where – maybe that's an argument that is made with regards to threat, and I put that in quotes. But we have adopted what I guess you could say is the worst-case scenario for the appellants in terms of what the plaintiffs say and these witnesses now say was said to them during their interviews. Well, if that's – so if you're accepting those allegations – accepting those allegations, how is it not the case that the – that there's a viable Brady claim here, that that needed to be disclosed in the context of evaluating the witness's testimony? Well, that goes to the heart of qualified immunity, and that is you must have clearly established law of which every reasonable officer would perceive that there's been a constitutional violation. And what our position is with respect to the Brady claims and even the fabrication claim is that accepting these facts that the plaintiff says exists, that not every officer would have appreciated that what they were doing at that time, pursuant to then-existing law, that a constitutional violation existed. Can I just – Yes, you may. Throughout your brief, it seems as if you're arguing something different from what the plaintiffs are alleging here. The question of whether or not these tactics, these interview tactics are appropriate or constitutional is not what the claim is. The claim is that the nature of the interviews and the inconsistent statements should have been disclosed, and I guess I don't understand – given that Brady was long before these events, I don't understand your argument that we should be considering, well, whether or not – whether or not the tactics were improper is the issue as opposed to whether or not it should have been disclosed. And the issue is whether or not every reasonable officer would have appreciated that the methods that were used were unconstitutional and should have been disclosed. No, no, no. It's not about – the duty of disclosure is not because of necessarily unconstitutionality. If a witness is offered a deal to cooperate in exchange for their testimony, there's nothing improper about offering a cooperation deal to individuals, but you have to disclose it. It's about its use for impeachment, and so here, even apart from the interview tactics, these individuals made statements that were contrary to what they were going to later say at trial. And so even if the tactics were 100 percent fine, I don't understand the argument that it was not clear that that had to be turned over. Well, and the argument goes back to whether or not under existing law every officer would have appreciated that the statements that derived from the methods that were used needed to be disclosed, and that's the rubric of qualified immunity. So you are relying on an argument, and remember there's Giglio. There are all these other line of cases that say that if an officer or a law enforcement officer or a prosecutor, for that matter, threatens a witness with charges, if that witness doesn't say X, Y, or Z or testify, for example, that that is material that needs to be disclosed to the defense. Do you disagree with my assessment of what the obligation is? Well, and I think we're talking about two different assessments. We're talking about the Brady assessment, and what I'm addressing is the qualified immunity assessment. So consistent, I think, with what my colleague has just asked about, if you have a – if there is a – with material information, in this case about the method of questioning that may shed real light on whether a witness is being truthful, what is that in your view? Is that Brady information? So it can be, and what I'm trying to do is draw the line between Judge Shutton's ruling with regards to whether or not there was a material dispute with regards to the facts concerning the Brady claims versus the claim or argument that's before this court that we're advancing as to whether or not qualified immunity exists with regards to those methods, and whether or not, based on those methods, disclosure was required. So if you – just assume that there was a Brady obligation, that that was violated because it was not disclosed to plaintiffs or the counsel, and further assume that, based on this line of cases, that there was an obligation to disclose, I guess – are you saying that the officers were not aware of their obligation to disclose, and therefore they were entitled to qualified immunity? Well – Is that the argument? And when you say officers, we're speaking objectively. Objectively, the qualified immunity case law says there must be clearly established law. And assume that. If there is, yes, and let's assume there is, that then the second step of that analysis must be that every competent, reasonable officer would have appreciated that failure to, in this case, disclose that material would have been lawless or unlawful. And so our argument is that, yes, if you assume that it was improper to not disclose these methods or those particular denials, that the next step is where the officers were rightful in not disclosing what plaintiffs have now said occurred. I understand your argument now. Okay. Thank you very much.  May it please the Court, Ilan Mazzel for Vernon Horn. First, 90% of the arguments, the qualified immunity arguments, had been waived. In their 95-page moving brief below, docket 221-3, and their 64-page reply, docket 283, they never argued that qualified immunity applied to any of the Brady claims. I double-checked this myself twice this week. It is not there. They did not argue either that qualified immunity applies to any of the fabrication claims except the Pearson claim. So 90% of this appeal, they didn't argue below. I think now the argument may be, as I understand it, but perhaps I'm wrong, that there was a broad claim of qualified immunity that they didn't, therefore, thereafter, have to specifically raise in connection with every I and every T in the argument. I don't think that's correct. They were very clear below what they were claiming qualified immunity for, and they simply didn't for any of the Brady claims or almost any of the fabrication claims. And this Court has held in Torshaw, Lurico, and Wheeler, we cannot raise qualified immunity for the first time in an appeal. They simply sandbagged us here. That's number one. Number two, your Honor is correct. This Court has no jurisdiction on this interlocutory qualified immunity appeal because defendants dispute all the material facts. Your Honor raised one example. I'll give another. Page 13 of their reply brief to this Court. They say, quote, there is no evidence that any defendant detective coached either Pearson or Thompson to say what they wanted. Okay. What did Mr. Pearson say in his deposition? DACA 234-6, page 80. Quote, the detectives told me what to say. They didn't want to hear what I had to say. Page 85. Let me ask you this. What if we credit today? Is it possible to say today at oral argument, you know what, actually, we will assume all the facts, notwithstanding what you're reading, notwithstanding what I read earlier. We'll assume all the facts. Is that possible? No, it's not, Your Honor. It's much too late. We had hundreds of pages of briefing below and on appeal. They disputed the material facts at every level. They cannot rescue jurisdiction by simply coming to an oral argument and saying, well, now we accept the facts. Why is it, as a practical matter, too late, though? I mean, if in fact the information that's in both parties' briefs, if we do in fact read it as accepting all of your allegations, it doesn't seem to, for most of the claims, change the nature of their argument. So to the extent that the briefing says, well, this person wasn't threatened or this person only refused to talk twice instead of 18 times, the heart of their argument doesn't seem to rest on that. So, Your Honor, I will turn to the merits because I think the merits are very straightforward. The reason I think they've been fighting the facts is because the clearly established law back in the 1970s is that these were Brady violations. As to Mr. Pearson, they threatened to take, to throw him in prison. They threatened to throw his mother in prison. They threatened to take his children away if he didn't adopt their fabricated story that Mr. Horne gave him a phone and that he called Ms. Sykes. Mr. Pearson was the one and only link between any piece of physical evidence, the stolen cell phone, and either defendant. And the detectives concocted this story, coerced him into finally adopting it after many, many times he said there's no truth to it. And we know today for a fact that that entire story was fabricated because the FBI did a report proving that that call never took place from New Haven, Mr. Pearson's fortune. So he is now prepared to, your friend on the other side is now prepared to accept all those facts. Yes. Accept that there is clearly, assume that there's clearly established law and so on. But he says that no reasonable officer would understand at that point that what he or she was doing to Mr. Pearson, for example, was a violation of law. The clearly established laws is Giglio, 1972. It's Bagley, 1975. It's this court's holding in Lewis. It's the Second Circuit's holding in 1997, Eric Schuette. These officers are supposed to understand clearly established law. And the clearly established law back in the 90s, the 80s, and the 70s is that if you have prior inconsistent statements of a witness, you're supposed to turn those over to the defense. In this case, they're supposed to turn them over to prosecutors. If you have a coercion of a witness, that is supposed to be revealed to the prosecutors who are then supposed to reveal to the defense. There's nothing new about this. This was known in the 70s, the 80s, and the 90s. Those are the clear holdings of this court repeatedly and the Supreme Court. Even Mr. Nicholson, the prosecutor in this case, who I deposed, admitted this was Brady material. This is just one example. DACA 236-1, page 136 of the prosecutor's deposition. Did Detective Breland ever tell you what he told us under oath that Thompson said he could not identify a foreigner in Jackson? Answer, no. Question, and that is Mr. Breland's failure to disclose Brady material, right? Answer, yes. Question, are you disturbed at Detective Breland's conduct? Answer, I'm not happy. So this is about as clear a series of Brady violations as we could possibly have. They were clearly established decades ago. And Pearson testified that he insisted that there was no phone at least five different times? Yes, yes. He testified, page 62. They told me if I ain't telling them what they wanted to hear, I wouldn't be walking out of here. I would be charged. Page 67, quote, they told me to say I used the phone or I was facing charges. This entire theory of the phone came from the detectives. They created it. They fabricated it. They coerced this poor man to, on pain of losing his children, his mother and himself and his freedom, to adopt their story. And this is a pattern of what they did. They did the same thing with Mr. Thompson, 19-year-old. Took him to the station, put him under bright lights in a locked room, denied him food, water, any adult, and he was the one and only person who ultimately identified Horn and Jackson through ski masks, supposedly, as the perpetrators. We don't even have to believe a thing you say. All we need to know is I understand that there's a dispute about this. Absolutely. Mr. Thompson testified he told the detectives 18 times, I cannot identify people through ski masks. And then the detectives came up with this theory that, well, Mr. Horn had yellow eyes, and therefore you identified the yellow eyes. And if you just initial here, you'll be able to walk out of here. May I ask a question about the relationship between this forfeiture argument and the appellate jurisdiction argument? So what are the ramifications or consequences if we were to agree, for example, that at least a number of the arguments were forfeited, as opposed to if we were to disagree and then nevertheless say that we dismiss for lack of appellate jurisdiction? What are the consequences when this goes back to Judge Satney? I don't think there are any consequences. I don't think there's any difference either way. This case, we know this case is going to trial. Monel claims they're going forward against the city of New Haven. There are other Brady claims they did not appeal that are going forward against the detectives. There are state law claims going forward against the detectives. The question of waiver is waiver on this motion and on this appeal. So it is true qualified immunity isn't the answer. And we can have a trial. And if they somehow believe on if we prevail at the trial, which I certainly hope we do. So can they bring up qualified immunity at the trial? They can bring qualified immunity to the extent that they accept plaintiffs' facts and the extent that there's any plausible or non-frivolous argument, which I don't think there is. But they have not waived qualified immunity for purposes of the entire case. They've waived it for purposes of this appeal. The last thing I would just say, Your Honors, is we waited three years for the district court to rule on these motions. We've waited seven years in this case. This entire sordid saga has been a 26-year saga. We want to get to trial once and for all. And I would urge the court first to grant our motion to dismiss for lack of jurisdiction and failing that to grant a summary order so that we can swiftly get back to the district court, get to justice once and for all. We've waited long enough. Thank you, Your Honors. I'm going to hesitate to say very much. I think ABLE counsel has done the job, and I don't want to mess it up. I just want to say that my name is Kenneth Rosenthal. I represent Marquis Jackson. Mr. Jackson is not here but is listening to this live stream. He was in prison for 19 years from the age of 19 to the age of 38. He's now in his mid-40s waiting. Next week will be seven years since he brought this claim. And one difference, Judge Lawyer, I think, in whether you dismiss this case because there are disputed issues of material fact that prevent this court's jurisdiction from considering it is I think we're going to get a quicker order, and that's of prime importance to us. When we filed our motion to dismiss, we in the alternative filed a motion for an expedited decision on the merits if that's where we end up. We're waiting for trial. We've been waiting for seven years. And as far as what happens at that trial, ABLE counsel filed an affirmative defense that he can pursue at the trial. And one of the reasons that the court doesn't have jurisdiction to decide these facts now is because that's the role, and I think many cases have said this, that's the role of the district court and the jury. And he'll have the opportunity to raise these issues there, to put on his evidence, to meet his affirmative burden of proof on that, on each of the claims that he's, in fact, waived below. The last thing I'll say, because this is a question that was raised, I think, at the beginning of the argument here, there's no question that not only were these claims raised at least with respect to two of the three counts. There's three counts involved here, right? There's the Brady count, there's the fabrication count, and there's the failure to intervene count. On the failure to intervene count, you can look back at their briefs in the district court. The word qualified immunity appears nowhere there. There's a single paragraph where they say there's no violation of the obligation to intervene because there were no underlying constitutional obligations. That's all they say. They said it twice. They said it in their original brief and their later brief. As far as the fabrication claim, defense counsel themselves, in their brief here on page 51, acknowledge that when Judge Schotteny ruled ultimately that he was denying their summary judgment motion, he did not reach qualified immunity. So the district court has never ruled on this, never ruled on qualified immunity with respect to fabrication or with respect to intervention. There is this ruling on a portion of the Brady claim, but it's disputed. So I would urge the court to dismiss the case because there's no jurisdiction here. Pursuant to the motion to dismiss, we filed that was assigned to this panel to consider along with the merits. But if not, to issue, as the able counsel has requested, a summary order that indicates this is not a closed case. Brady, Giglio, Lewis, and a score of other cases say you can't do what if you believe the plaintiff's evidence was done here and not disclose it. Thank you. Unless there are any other questions, I will sit down. Thank you very much. I did reserve a couple minutes if I may. Just to pick up on counsel's point with regard to fabrication, Judge Schotteny did not specifically rule on the qualified immunity issue, but the law infers a denial of the qualified immunity issue in such circumstances. And that's why that issue is properly before your honors. With regard to the waiver issue, qualified immunity is mentioned throughout the briefing in the summary judgment motions. It's in there. So there were specific arguments that you just heard that with respect to specific claims, the words qualified and immunity don't even show up. Is that correct or is that wrong? That is incorrect. Okay. The words qualified immunity are laced throughout the arguments. No, no, no, no, no. This is why I phrased my question the way I did, in connection with specific claims. So there are three claims, Brady, failure to intervene, fabrication of evidence. With respect to at least, I think, two of those claims, but certainly failure to intervene, the words qualified and immunity do not show up. Is that correct? My recollection is that is incorrect. Okay. So if we were to look after this, we would be able to confirm that. We've got docket numbers. Yes. Okay. Okay. With regards to the waiver, your honor made a good point, and that is there's no prejudice here. These matters are all properly before the court. There was no sandbagging going on. From the outset of the case, the affirmative defense has said that qualified immunity was at issue, and the detectives throughout have maintained the claim that they didn't do it. That is sufficient. With regards to the coercion issue, I'd refer the court to the coercion case law, which buttresses the fact that the methods that these detectives utilized during these interviews, which, oh, by the way, Pearson, Thompson, throughout the trial and many, many years, if not decades later, said they were never threatened, they were never coerced. Now they're saying it. We're accepting it as true. Okay. But the coercion case law says that these, quote, unquote, tactics were appropriate. It is appropriate to misrepresent facts. It is appropriate to state the consequences, that you might not see your children. Can I say one thing? Yes. Is it appropriate to say we will charge your mother? In the case law, it is appropriate. So there is a case that says I can charge your parents? Not specifically. But it says that you can provide to witnesses that there are consequences that might result to your family, whether it be children, whether it be parents, things of that nature. And that goes also back to sort of vagaries. Does that sound right to you? Because we've got also the prosecutor's sworn testimony that that is brainy. My answer is it depends on the context in which these interviews happened. And that would be my parting word to- The problem for you when you answer it that way is that when we view context under these circumstances, we've got to view context in the way most favorable to the plaintiffs. Absolutely. Okay. Yes. Okay. Thank you very much. Thank you all. And we will take the matter under advice.